IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WESTERN STAR HOSPITAL )
AUTHORITY INC., )
 )
   Plaintiff, )  CIVIL ACTION NO. 18-1011
 )
  v. )  JUDGE CERCONE
 )
UNITED STATES DEPARTMENT OF )  *(Electronically Filed)*
VETERANS AFFAIRS, )
 )
   Defendant. )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Western Star Hospital Authority, Inc. ("Plaintiff") brought the instant action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking to compel Defendant the United States Department of Veterans Affairs ("VA" or "Defendant"), to disclose certain documents and information requested by Plaintiff pursuant to FOIA.  In the administrative process, Defendant disclosed more than one thousand pages of responsive records to Plaintiff, redacting portions of those records that fall within specific FOIA exemptions.  Defendant now moves this Court for summary judgment in its favor, as Defendant has disclosed all responsive documents not subject to a FOIA exemption.  For this reason, as further detailed below, Defendant respectfully submits that there exists no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law.

## FACTUAL BACKGROUND

### a.  FOIA Request

On October 3, 2017, the VA received a FOIA request letter dated October 2, 2017 from Plaintiff's counsel, Phinorice J. Bolden of Fineman, Krekstein & Harris, P.C. ("FOIA Requestor"),

1

which requests documents related to the VA's Office of Inspector General ("OIG")'s investigation regarding a contract entered into between Plaintiff and the VA.  Declaration of Jeffrey B. Adamson ("Adamson Decl."), Ex. A.  The VA OIG sent a response letter to the FOIA Requestor dated October 5, 2017, to which it attached two (2) pages of responsive records.  Adamson Decl., Ex. B. The VA OIG's October 5, 2017 letter also explained that records related to administrative investigations are not maintained by the VA OIG but rather by the VA Central Office of Privacy and Records Management ("VACO"), and that the VA OIG was forwarding the FOIA request to VACO.  *Id.*

In a letter dated December 7, 2017, the VACO FOIA service advised the FOIA Requestor that the records requested were maintained at the VISN 4 VA's Stars and Stripes Health Care Network and the VISN 10 Cincinnati VA Medical Center.  Adamson Decl., Ex. C.  The FOIA Requestor was provided with FOIA tracking numbers as well as point of contacts and addresses for both of these facilities.  *Id.*  Unfortunately, the contact information provided for the VISN 4 FOIA was inaccurate due to a recent staff departure.  Adamson Decl., at ¶ 8.  Shortly thereafter, on or about December 26, 2017, Plaintiff's FOIA request was forwarded to Jeffrey B. Adamson, Government Information Specialist for the VA.  Adamson Decl., at ¶ 9.  By letter dated December 28, 2017, Adamson advised the FOIA Requestor that the VISN 4 FOIA office had received the FOIA request.  Adamson provided the FOIA Requestor with the FOIA tracking number that was assigned to the request, and advised that the request had been placed in the complex processing track based on the time necessary to process the request.  Adamson Decl., Ex. D.

On January 3, 2018, Adamson learned that the VA Pittsburgh Healthcare System had convened an Administrative Investigation Board ("AIB") to conduct an investigation into issues related to a contract between Plaintiff and the VA.  Adamson Decl., at ¶ 12.  Shortly thereafter,

Adamson requested all documents related to the pertinent AIB investigation.  Adamson Decl., at ¶ 13.   On January 30, 2018, Adamson received a total of 1385 pages of records related to that investigation.  Adamson Decl., at ¶ 14.   On February 2, 2018, Adamson sent another letter to the FOIA Requestor, explaining that, due to the volume of documents he would have to review, the processing of the request would require additional time.  Adamson Decl., Ex. E.  Thereafter, between February 2 and April 18, 2018, Adamson conducted a line-by-line review of the 1385 pages of records.  Adamson Decl., at ¶ 15.   On April 18, 2018, the VA sent its initial agency decision letter along with the copy of the 1385 pages of responsive records on a CD to the FOIA Requestor.  In that letter, the FOIA Requestor was advised that the agency had withheld/redacted some information pursuant to FOIA exemptions found at 5 U.S.C. § 552(b)(5) and (b)(6). Adamson Decl., Ex. F.  The letter also explained that the FOIA Requestor had a right to appeal the agency's determination within 90 days from the date of the letter.  *Id.*

On June 8, 2018, the FOIA Requestor filed an appeal with the VA Office of Counsel regarding the VA's initial decision.  *See* Dkt. No. 1-4.  On July 31, 2018, before receiving a response to the administrative appeal, Plaintiff filed the instant Complaint.  *See generally* Dkt. No. 1 ("Comp.").

    **b.  <u>Background regarding the AIB Investigation</u>**

As noted, the 1385 pages of records produced to Plaintiff in this case were created during the course of an AIB investigation.  As described in the VA's Handbook on Administrative Investigations, the VA may convene an AIB to investigate any issue related to the VA's administration, and, in doing so, shall:

> a. Select members who are impartial and objective with respect to the subject matter of the investigation and who have the ability to conduct the investigation effectively;

b. Coordinate, as necessary, for participation by members and necessary support staff;

c. Provide clear guidance to the AIB regarding the subject matter into which the AIB is authorized to inquire (i.e., the "scope" of the investigation), applicable policies, and other aspects of the investigation in a "Charge Letter" and related documents;

d. Provide any necessary financial, personnel or other support for the investigation;

e. Ensure that investigation activities are properly coordinated with those of other VA organizations and non-VA entities; and

f. Oversee the activities of the AIB to ensure an objective and effective investigation, providing supplemental guidance as necessary to meet VA informational needs.

Administrative Investigations Handbook 0700, Department of Veterans Affairs Office of

General Counsel (July 31, 2002), available at https://www.va.gov/ogc/investigations.asp

(last visited on January 16, 2019), at p. 1-2.

Once convened, the duties of AIB members include:

1. Maintaining objectivity, impartiality, and professionalism both in fact and in appearance, and preserving the confidentiality of the information obtained throughout the investigation process;

2. Identifying the specific issues for investigation within the scope of investigation established by the Convening Authority, including new issues raised by evidence or information obtained in the course of the investigation;

3. Coordinating their investigative activities with any other involved investigative authorities under the direction of the Convening Authority;

4. Collecting, preserving, and securing evidence material to the issues;

5. Identifying and interviewing subjects of the investigation and other witnesses, according them any rights provided by law, regulation, or governing collective bargaining agreements, and properly documenting such interviews;

6. Complying with other applicable law, regulations, and policies, including VA Directive 0700 (Administrative Investigations), this Handbook, and any other policies identified in the Charge Letter (See Chapter 2. Section C and APPENDIX I of this Handbook);

4

7. Requesting assistance or determinations by the Convening Authority or legal counsel when necessary to accomplish the purposes of the investigation;

8. Objectively, carefully, and skillfully analyzing evidence to determine the facts that are not subject to reasonable dispute, and drawing conclusions regarding other issues to the extent justified by the available evidence;

9. Providing an investigative report to the Convening Authority that clearly communicates the undisputed facts, the conclusions reached regarding other issues, and the evidence upon which they are based; and

10. Other duties as directed by the Convening Authority.

*Id.* at pp. 1-2, 1-3.  The Handbook further states that, "[u]pon receipt of the AIBs investigative report and investigative file, the Convening Authority must review the report and certify completion of the investigation [and] . . . take any necessary action based on the results of the investigation, including appropriate dissemination of the results of the report to other officials within VA."  *Id*. at p. 1-2.

In this case, the records produced to Plaintiff show that the VA Pittsburgh Healthcare System convened an AIB composed of three (3) members, and issued a Charge Memorandum setting out the scope of the AIB's investigation on April 6, 2017.  Adamson Decl., Ex. G (April 6, 2017 Charge Memorandum).  During the course of its investigation, the AIB conducted numerous hearings in which the AIB members questioned VA employees and collected certain documents, including email communications.  Relying on the information collected, the AIB then issued its Report of Investigation on June 27, 2017, setting out its findings and recommendations regarding the issues raised in the Charge Memorandum.  Adamson Decl., Ex. H (Redacted June 27, 2017 Report of Investigation).  Among other things, the AIB found that it lacked jurisdiction to investigate Plaintiff's allegations that third party contractors (specifically, PARC) delayed or otherwise interfered with Plaintiff's provision of ambulance services.  *Id.* at pp. 4-5.  In addition,

the AIB found that "the VA Pittsburgh did not have any influence nor would be able to coerce any contractor's behavior, if any, into acting against current or future competitors."  *Id.*

## STANDARDS OF REVIEW

### a.  Summary Judgment Standard

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Negley v. F.B.I.*, 825 F. Supp. 2d 63, 68 (D.D.C. 2011); *Cooper Cameron Corp. v. Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002).  Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides that the "judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  Where no genuine dispute exists as to any material fact, summary judgment is required.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).   A genuine issue of material fact is one that would change the outcome of the litigation.  *Id.* at 248.  "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case."  *Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (emphasis in original)).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment, the plaintiff must state specific facts or present some objective evidence that would enable the court to find he is entitled to relief.  In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the Supreme Court held that, in responding to a motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute.  *Id.* at 322-23.  The Supreme Court further

6

instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327.

### b.   Defendant Has Submitted A Proper "Vaughn" Index.

In moving for summary judgment in a FOIA case, agencies must establish a proper basis for withholding responsive documents.  "In response to this special aspect of summary judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA Plaintiffs."  *Judicial Watch, Inc. v. U.S. Dept. of Health and Human Services*, 27 F. Supp. 2d 240, 242 (D.D.C. 1998).  These declarations or affidavits (singly or collectively) are often referred to as a Vaughn index, after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).

There is no set formula for a Vaughn index.  "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form."  *Kay v. F.C.C.,* 976 F. Supp. 23, 35 (D.D.C. 1997).  "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege."  *Delaney, Midgail & Young, Chartered v. I.R.S.*, 826 F.2d 124, 128 (D.C. Cir. 1987); *see also Keys v. U.S. Dept. of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987); *Hinton v. Dep't of Justice*, 844 F.2d 126, 129 (3rd Cir. 1988).  In addition, "[a]n affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply

affidavits from each individual who participated in the actual search." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814 (2d Cir. 1994).

The Court may award summary judgment solely on the basis of information provided in affidavits and/or a Vaughn index when those documents describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." *Founding Church of Scientology of Washington, D.C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979). Furthermore, "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents. *SafeCard Services, Inc. v S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citations and quotation marks omitted).

In the case at bar, the agency has submitted a supporting declaration and Vaughn index in support of its motion for summary judgment. The agency declaration was prepared by the individual who handled the search and review of records responsive to the FOIA request, specifically, Jeffrey B. Adamson. *See* Adamson Decl. As set forth below, the declaration and index submitted in support of this motion meets the requirements of *Vaughn*, and provides the Court with the requisite basis to grant Defendant's motion.

## ARGUMENT

### a.  The VA's Search was Adequate.

Plaintiff's Complaint does not appear to challenge the adequacy of the VA's search for responsive records.  *See* Comp. at ¶¶ 54-57 (alleging only that the defendant "did not produce unblemished copies of the records requested" and "has wrongfully withheld the records requested by the plaintiff Metro-Health.").  Nevertheless, in an abundance of caution and for the sake of completeness, the VA will briefly address this issue.

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records.  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp.2d 146, 158 (D.D.C. 2004); *Allen v. U.S. Secret Service*, 335 F. Supp. 2d 95, 97 (D.D.C. 2004); *Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health*, 844 F. Supp. 770, 776 (D.D.C. 1993); *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith."  *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985); *Goland v. Central Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1987), cert. denied, 445 U.S. 927 (1980).  The adequacy of a search is necessarily "'dependent upon the circumstances of the case.'"  *Kronberg v. Dep't of Justice*, 875 F. Supp. 861, 869 (D.D.C. 1995) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see also Judicial Watch, Inc.*, 337 F. Supp. 2d at 158.  The fundamental "question is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'"  *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific

request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).  Indeed, FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request when responsive documents are likely to be located in one place.  *Marks v. United States Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978).  Nor does FOIA require that the agency search every record system.  *Oglesby*, 920 F.2d at 68.  Furthermore, the agency is not required to speculate about potential leads to the location of responsive documents.  *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996).

The Adamson declaration demonstrates through detailed, non-conclusory averments that, in this case, the VA engaged in a "good faith effort to conduct a search for the requested records, using methods which [were] reasonably expected to produce the information requested." *Oglesby*, 920 F. 2d at 68.  Plaintiff's FOIA request sought all records pertaining to the AIB's investigation concerning a contract between Plaintiff and the VA.  *See* Adamson Decl., Ex. A.  Given that such information was held by VACO, the request was forwarded to that office, and later to Adamson at the VISN 4 FOIA office.  Adamson then conducted a diligent, good faith search for all documents related to the pertinent AIB investigation and located more than a thousand pages of documents. Adamson Decl. ¶¶ 11-14.  Based on the description of the nature and scope of the VA's search for the records responsive to Plaintiff's FOIA request as set forth in the Adamson Declaration, it is clear that the VA conducted a reasonable search for responsive records.  It is also clear that, in conducting this search, the VA used methods "which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68.  The VA has thus satisfied the search obligations imposed upon it under law.

### b.  The VA Properly Applied FOIA Exemptions.

FOIA provides nine exemptions from its disclosure requirement and agency information falling within the terms of these exemptions need not be disclosed.  *See* 5 U.S.C. § 552(b).  In this case, the VA invokes two exemptions:  the deliberative process exemption pursuant to 5 U.S.C. § 552(b)(5) ("Exemption 5") and the personal privacy exemption pursuant to 5 U.S.C. § 552(b)(6) ("Exemption 6").  *See* Adamson Decl., Ex. F.  To prevail on its motion for summary judgment, the VA "has the burden of showing that . . . any withheld documents fall within an exemption to the FOIA."  *Carney*, 19 F.3d at 812.  As described below, the VA clearly has met that burden.

### i.  Exemption 5

5 U.S.C. § 552 (b)(5) protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption includes the deliberative process privilege, which protects "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 149-150 (1975) (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeisee, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966)).  This unique governmental privilege protects pre-decisional and deliberative communications, shielding from disclosure "the deliberative process that precedes most decisions of government agencies."  *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1047 (D.C. Cir. 1982). A communication is pre-decisional if "it was generated before the adoption of an agency policy" and it is deliberative if "it reflects the give-and-take of the consultative process."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

There are essentially three policy bases for this privilege.  First, it protects creative debate and candid considerations of alternatives within an agency, and, thereby, improves the quality of

agency policy decisions.  Second, it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon.  And, third, it protects the integrity of the decision-making process itself by confirming that "officials should be judged by what they decided[,] not for matters they considered before making up their minds." *Russell,* 682 F.2d at 1048 (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772–73 (D.C. Cir. 1978)).  Notably, the deliberative process privilege remains in place even after a final decision has been made, because "disclosure at any time could inhibit the free flow of advice." *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 360 (1979).  Furthermore, when evaluating a claim of deliberative process privilege, courts must defer to the agency's explanation of its decisional process, given the agency's expertise in determining "what confidentiality is needed 'to prevent injury to the quality of agency decisions.'" *Pfeiffer v. CIA*, 721 F. Supp. 337, 340 (D.D.C. 1989) (quoting *Chemical Mfgrs. Ass'n v. CPSC*, 600 F. Supp. 114, 118 (D.D.C. 1984)).  Finally, this exemption applies without regard to the needs of a particular plaintiff.  *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).

In determining whether the deliberative process exemption applies, the critical factor "is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (quoting *Dudman Communications Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567-68 (D.C. Cir. 1987)).  Accordingly, "the exemption protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." *Russell*, 682 F.2d at 1048.  To that end, courts have found that even factual materials are encompassed within the privilege, if release of such materials would harm the overall deliberative process.  *National Wildlife Federation v. U.S. Forest Service*, 861 F.2d 1114, 1118

(9th Cir. 1988) (quoting *Montrose Chemical Corp. of California v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974); *see also Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156, 169 (D.D.C. 2004) (protecting notes taken by SEC officials at meeting with companies subject to SEC oversight; finding that, though factual in form, notes would, if released, "severely undermine" SEC's ability to gather information from its regulatees and in turn undermine SEC's ability to deliberate on best means to address policymaking concerns in such areas); *Brannum v. Dominguez*, 377 F. Supp. 2d 75, 83 (D.D.C. 2005) (allowing the Air Force to withhold "vote sheets" that were used in the process of determining retirement benefits because, while the vote sheets were factual in nature, they were used by agency personnel in developing recommendations to an agency decisionmaker and thus were "precisely the type of pre-decisional documents intended to fall under Exemption 5"); *Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 13 (D.C. Cir. 2014) (finding that "context matters," and here entire document, including factual material, "'reflects the full and frank exchange of ideas" so that factual portions "could not be released without harming the deliberative processes of the government") (citation omitted)); *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 375 (4th Cir. 2009) (protecting factual portions of document because such information, when viewed as part of a larger document "would reveal the very predecisional and deliberative material Exemption 5 protects").

As described in the Adamson Declaration and accompanying Vaughn Index, certain information withheld in this case is protected by the deliberative process privilege. Specifically, Exemption 5 applies in this case to information contained in witness transcripts, email messages and other internal memoranda obtained during the course of the AIB investigation. The withheld information is clearly pre-decisional because it occurred before the AIB issued its Report of Investigation on June 27, 2017. Furthermore, the withheld information is deliberative. As noted,

the three-member AIB in this case was convened for the specific purpose of investigating issues related to Plaintiff's provision of ambulance services and providing a Report of Investigation regarding these issues to the VA Pittsburgh Healthcare System.  To that end, the AIB compiled relevant information from knowledgeable parties, including witness testimony and internal email communications, which it then relied upon to prepare its Report of Investigation.  There is no question that the process the AIB undertook to collect the relevant information (*e.g.*, deciding whom to interview, what questions to ask, what documents to collect, etc.) is deliberative.  And, because the information ultimately collected, including both witness testimony and email communications, was the result of this deliberative process, the information, if disclosed, "would reveal [the] agency's decision-making process."  *Russell*, 682 F.2d at 1048; *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 575 F.2d 932, 935 (D.C. Cir. 1978) (distinguishing between "raw facts with informational value in their own rights" and facts that "serve primarily to reveal the 'evaluative' process by which different members of the decisionmaking chain arrive at their conclusions" and holding that cost comparisons were "disclosure of even purely factual material Exemption (b) (5) applies" deliberative because they were "directed at a particular decision.").[1] Additionally, there is a very real concern that disclosing witness testimony to the public would discourage witness' willingness to provide candid responses to the AIB, thus inhibiting the VA's ability to conduct these types of investigations in the future.  *Access Reports*, 926 F.2d at 1195;

---

[1]  In light of the above, the VA could have lawfully withheld *all* testimony and email communications collected during the course of the AIB's investigation, as these records were the direct result of, and reflected, the AIB's internal decision-making process.  However, in an abundance of caution, Adamson spent months conducting a line-by-line review of the records in attempt to disclose any and all potentially non-exempt information.  Having done so, the VA clearly met its burden under FOIA to disclose all "reasonably segregable" non-exempt information to the public.  *See Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F.Supp.2d 1, 18 (D.D.C. 2004).

*Reliant Energy Power Generation Inc. v. FERC*, 520 F. Supp. 2d 194, 204 (D.D.C. 2007) (protecting documents related to factual investigation because release "would allow a reader to probe too deeply into the thought processes of the drafters and would have a chilling effect on communication between agency employees"); *Quarles v. U.S. Dep't of the Navy*, 893 F.2d 390, 392-93 (D.C. Cir. 1990) (withholding factual material because it would expose agency's decisionmaking process and chill future deliberations).   Thus, as described in the Adamson declaration and the Vaughn Index, in order to protect the agency's decision-making process, the VA properly withheld certain pre-decisional and deliberative information contained in the records produced pursuant to Exemption 5.[2]

    ii.  <u>Exemption 6</u>

5 U.S.C. § 552(b)(6) permits the government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute an unwarranted invasion of personal privacy."  *See* 5 U.S.C. § 552(b)(6).   The purpose of Exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information."  *U.S. Dep't of State v. Washington Post Co.*,

---

[2] Plaintiff's claim in its administrative appeal that the documents withheld "would be discoverable during a civil lawsuit, and therefore must be produced pursuant to a FOIA request" is also misplaced.   It is well-established that "[t]he FOIA disclosure regime . . . is distinct from civil discovery," where "[d]ifferent considerations" are at issue.   *Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009) (citation omitted); *Baldrige v. Shapiro*, 455 U.S. 345, 360 n. 14 (1982) (noting that the primary purpose of FOIA was not to serve as a substitute for discovery).   Unlike a "constitutionally compelled disclosure to a single party" during discovery, *Cottone v. Reno*, 193 F.3d 550, 556 (D.C. Cir. 1999), a FOIA disclosure is "to the public as a whole[.]"  *Stonehill*, 558 F.3d at 539 (citation omitted).   Further, "the stakes of disclosure for the agency are greater in the FOIA context" because "there is no opportunity to obtain a protective order."  *Id*. at 539–40.   The FOIA's "nine enumerated exemptions are designed to protect those 'legitimate governmental and private interests' that might be 'harmed by release of certain types of information'" to the public at large.  *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (citation omitted).   Thus, "not all documents available in discovery are also available pursuant to FOIA."  *Stonehill*, 558 F.3d at 539.

456 U.S. 595, 599 (1982).  The statutory language concerning files "similar" to personnel or medical files has been read broadly by the Supreme Court to encompass any "information which applies to a particular individual . . . sought from government records."  *Id*. at 602.  The privacy interest in Exemption 6 "belongs to the individual, not the agency."  *Amuso v. U.S. Dep't of Justice*, 600 F.Supp.2d 78, 93 (D.D.C. 2009).

In determining whether personal information is exempt from disclosure under Exemption 6, the Court must balance the public's need for this information against the individual's privacy interest.  *See Wood v. F.B.I.*, 432 F.3d 78, 86 (2d Cir. 2005). "The privacy side of the balancing test is broad and encompasses all interests involving the individual's control of information concerning his or her person."  *Id*. at 88 (citation and internal quotation marks omitted); *Associated Press v. U.S. Dep't of Justice*, 549 F.3d 62, 65 (2d Cir. 2008) ("The privacy interests protected by the exemptions to FOIA are broadly construed.").  Accordingly, even a small privacy interest triggers a balancing analysis.  *See Associated Press v. U.S. Dep't of Defense*, 554 F.3d 274, 285 (2d Cir. 2009) (citation omitted) ("Thus, 'once a more than de minimis privacy interest is implicated the competing interests at stake must be balanced in order to decide whether disclosure is permitted under FOIA.'").  On the other hand, the "only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA', which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.'"  *U.S. Dep't of Def. v. Fed. Labor Relations Auth*., 510 U.S. 487, 495 (1994) (citation omitted).  "The requesting party bears the burden of establishing that disclosure of personal information would serve a public interest cognizable under FOIA." *Associated Press*, 549 F.3d at 66.

In this case, the agency withheld the following types of information pursuant to Exemption 6:  personal identification information of witnesses involved in the AIB investigation—including names, signatures, physical and residential addresses, e-mail addresses, telephone numbers, job titles, and job descriptions and locations—as well as statements made during the AIB investigation that potentially could be used to identify these witnesses.  In his declaration, Adamson explains that he determined that withholding this information was warranted to protect the privacy of the individuals involved in the investigation (none of whom has consented to the disclosure of this information) against unnecessary questioning, harassment, embarrassment, and reprisals.  As noted, the withheld information includes not only personal identification information of these witnesses (such as names and e-mail information), but also information that could be used to deduce their identities (such as statements given in the furtherance of investigations), which might, for example, dissuade agency employees from participating in internal investigations.  Adamson Decl. ¶¶ 84, 95, 97.

Federal courts recognize that individuals have a significant privacy interest in their personal identification information.  *See, e.g., Judicial Watch, Inc. v. Food & Drug Admin*., 449 F.3d 141, 146 (D.C. Cir. 2006) (Exemption 6 applies to files about an individual and "bits of personal information, such as names and addresses"); *Associated Press*, 554 F.3d at 285 (citations omitted) ("It is well established that identifying information such as names, addresses, and other personal information falls within the ambit of privacy concerns under FOIA").  Furthermore, individuals have a privacy interest in not being associated with an agency investigation, and in protecting the details of their statements given in the course of such investigations.  *See, e.g., Pototsky v. U.S. Dep't of the Navy*, 695 F. Supp. 1084, 1087 (D. Haw. 1988) (applying Exemption 6 to deny FOIA request for witness statements made during an investigation, in part because of

17

"possibl[e] further intrusion upon the privacy of the witnesses who provided statements in the investigation"). This privacy interest clearly extends to government employees. *See Amnesty Int'l USA v. C.I.A.*, 728 F. Supp. 2d 479, 524–25 (S.D.N.Y. 2010) (holding that "the privacy concerns of releasing the personal information of agency employees are not overridden by any public interest in releasing the information"); *Jarvis v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, Civ. A. No. 4:07- 00111, 2008 WL 2620741, at *2 (N.D. Fla. June 30, 2008) (witnesses interviewed and ATF agents and employees involved in an investigation "have significant privacy interests in their names and the details of their statements," and the asserted privacy interest "falls within the statutory exemption").

On the other side of the balancing analysis, the revelation of personal identification information about the witnesses involved in the AIB investigation tells citizens nothing about "what their government is up to," *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989) (emphasis in original), and therefore there is little to no public interest in its disclosure. The release of the witness-related information withheld by the agency in this case would not contribute "significantly to public understanding of the operations or activities of the government," which is the "only relevant public interest in disclosure to be weighed in this balance." *Fed. Labor Relations Auth.*, 510 U.S. at 495–96 (emphasis in original) (citation and internal quotation marks omitted); *see also Perlman v. U.S. Dep't of Justice*, 312 F.3d 100, 106 (2d Cir. 2002), vacated by 541 U.S. 970 (2004), reinstated after remand, 380 F.3d 110 (2d Cir. 2004) (concluding that the privacy interests of witnesses and third parties to a Report of Investigation were strong, and that "[t]he strong public interest in encouraging witnesses to participate in future government investigations offsets the weak public interest in learning witness

and third party identities.  We find that the district court correctly concluded that the names of witnesses and third parties, along with their identifying characteristics, were properly redacted.").

Plaintiff's apparent private interest in this case—*i.e.*, using the disclosure to support a claim or lawsuit against the VA, UPMC and potentially other third parties for breach of contract and/or interference with contractual obligations—is insufficient to overcome any privacy interests of the individual involved in the AIB investigation.  *See, e.g., Ferrigno v. U.S. Dep't of Homeland Sec.*, No. 09 Civ. 5878, 2011 WL 1345168, at *8 (S.D.N.Y. Mar. 29, 2011) (in the context of an Exemption 6 analysis, opining that "[t]o the extent [p]laintiff is asserting that his interest in vindicating his claims justifies disclosure, this private reason for obtaining the information is clearly insufficient"); *Pototsky*, 695 F. Supp. at 1087 (the fact that plaintiff's sole purpose for obtaining witness statements "is to further his private interest in clearing his record" weighs against him in the Exemption 6 analysis).  Furthermore, Plaintiff's unsupported belief that the VA did not continue its business relationship with Plaintiff due to alleged "racial bias" does not satisfy the public interest standard required under FOIA.  "[I]f a FOIA requester asserts a public interest in uncovering Government deficiencies or misfeasance, the requester must produce evidence to support that public interest." *Jurewicz v. U.S. Dep't of Agric.*, 891 F.Supp.2d 147, 157 (D.D.C. 2012), aff'd, 741 F.3d 1326 (D.C. Cir. 2014); *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 173 (2004); *see also U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991) ("If a totally unsupported suggestion that the interest in finding out whether Government agents have been telling the truth justified disclosure of private materials, Government agencies would have no defenses against requests for production of private information"); *Sussman v. USMS*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (finding that USMS properly protected the privacy of various individuals stressing that "[w]hile we find [plaintiff] did in fact allege misconduct, his bare and

undeveloped allegations would not warrant a belief by a reasonable person that impropriety might have occurred"). "Allegations of government misconduct are easy to allege and hard to disprove, so courts must insist on a meaningful evidentiary showing." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 175 (2004) (citations and internal quotation marks omitted). Here, Plaintiff has failed to produce evidence that would warrant a belief by a reasonable person that the VA engaged in any misfeasance or harbors racial bias; rather, the evidence shows that Plaintiff simply is disappointed that it failed to enter into a profitable business venture with the VA and/or its contractors.

In short, because the VA, in redacting the subject material pursuant to Exemption 6, properly balanced the privacy interests of individuals against the interest of the public in learning about the operations of its government, and because those privacy interests so substantially outweigh any public interest in the subject information, the Court should uphold the VA's decision to redact the subject information.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that summary judgment be granted in its favor and against Plaintiff, and that this matter should be dismissed with prejudice.

Respectfully submitted,


SCOTT W. BRADY
United States Attorney

/s/ Karen Gal-Or
KAREN GAL-OR
Assistant U.S. Attorney
Joseph F. Weis, Jr. U. S. Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 894-7326
Karen.GalOr@usdoj.gov
PA ID No. 317258

/s/ Jill L. Locnikar
JILL L. LOCNIKAR
Assistant U.S. Attorney
Joseph F. Weis, Jr. U. S. Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
(412) 894-7429
Jill.Locnikar@usdoj.gov
PA ID No. 85892

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of April, 2019, a true and correct copy of the within

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION

FOR SUMMARY JUDGMENT was duly served by either electronic filing and/or first class

mail, postage prepaid, upon the following:

Richard J. Perr, Esq.
Phinorice J. Boldin, Esq.
Laura A. Seider, Esq.
Tenn Penn Center
1801 Market Street, Suite 1100
Philadelphia, PA 19103
*Counsel for Plaintiff*

<u>/s/ Karen Gal-Or</u>
KAREN GAL-OR
Assistant U.S. Attorney

<u>/s/ Jill L. Locnikar</u>
JILL L. LOCNIKAR
Assistant U.S. Attorney