IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WESTERN STAR HOSPITAL AUTHORITY INC., t/d/b/a METRO HEALTH EMS, | ) ) ) ) | |
| | ) | CIVIL ACTION NO. 18-1011 |
| Plaintiff, | ) ) | JUDGE CERCONE |
| v. | ) ) | *(Electronically Filed)* |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF WESTERN STAR HOSPITAL AUTHORITY INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Western Star Hospital Authority Inc., t/d/b/a/ Metro Health EMS ("Plaintiff"), submits this memorandum of law in opposition to the Motion for Summary Judgment filed by Defendant United States Department of Veteran Affairs ("Defendant").

## I.      INTRODUCTION/STATEMENT OF THE CASE

This action for injunctive relief arises out of Defendant's improper withholding of agency records. Through the Complaint, Plaintiff requests that this Honorable Court order Defendant to abide by its obligation under the Freedom of Information Act ("FOIA") and produce unredacted copies of the requested documents; in this case, documents that Plaintiff believes will demonstrate the existence of racial bias/discrimination within the Department of the Veterans Affairs.

Before the Court is Defendant's Motion for Summary Judgment (the "Motion").  Despite the fact that the information Defendant produced in apparent response to Plaintiff's FOIA request (the "Request") is, almost entirely, awash with blanket redactions that render any rational determination as to (a) the content of the information contained therein and/or (b) the applicability

{01586833;v1}

of any exemption to the information, virtually impossible, Defendant seeks an order in its favor. However, because the massive extent of Defendants redactions render any rational determination as to (a) the content of the information contained therein and/or (b) the applicability of any exemption to the information, virtually impossible, there are genuine issues of material facts as to whether ***any*** exemptions to disclosure apply.  Therefore, this Court must deny the Motion, in its entirety.   In the alternative, this Court should conduct an *en camera* review of unredacted copies of the Response to determine whether the wholesale redactions applied by Defendant are improper.

## II.    BACKGROUND

### A.    The Parties

Plaintiff Western Star Hospital Authority Inc., t/d/b/a/ Metro Health EMS, is an emergency transportation company that provides basic life support and advanced life support ambulatory services to the greater Pittsburg area. *See* Affidavit of B. Lamont Doyle, attached hereto as Exhibit "A".  B. Lamont Doyle, NREMT-P RN BSN, Chief Operating Officer of Metro-Health EMS, is a citizen of these United States and of African American descent.  Exhibit "A" at ¶ 1.

Defendant United States Department of Veteran Affairs is a federal cabinet-level agency that provides healthcare and related services to military veterans at Veteran Administration ("VA") medical centers and other outpatient medical treatment centers. *See* Doc. 1 at ¶ 3.

### B.    Agents of the Defendant VA

Among the medical centers utilized by Defendant is the University of Pittsburgh Medical Center ("UPMC"). Exhibit "A" at ¶ 5.  UPMC runs a program known as "Medcall" a/k/a "PARC" ("PARC").  Exhibit "A" at ¶ 8.  PARC is an ambulance brokerage service for all UPMC-run facilities.  Exhibit "A" at ¶ 9. PARC receives incoming calls from patients in need of emergency

{01586833;v1}

transportation services, and assigns the call to one of several EMT companies with whom it partners.  Exhibit "A" at ¶ 10. UPMC, through PARC, receives a brokerage fee for every call they assign to an EMT provider.  Exhibit "A" at ¶ 11.

Medevac Ambulance Company ("MAC") is an ambulance company hired by UPMC to perform services as staff/paramedics, at the VA hospitals in Pittsburgh, PA and the surrounding areas.  Exhibit "A" at ¶ 12.  In that regard, MAC serves as the staffing agent for the Department of VA at the VA hospitals in Pittsburgh, PA and the surrounding areas. Exhibit "A" at ¶ 13.

The Bureau of Emergency Medical Services of the PA Department of Health is responsible for the statewide development and coordination of a comprehensive system to prevent and reduce premature death and disability.  Exhibit "A" at ¶ 14. Under Pennsylvania law, the Bureau of Emergency Medical Services has the responsibility for licensing all emergency medical service agencies and all prehospital care providers in the Commonwealth.  Exhibit "A" at ¶ 15.

The Emergency Medical Services Division of the PA Department of Health is known as Emergency Medical Services West ("EMSW"). Exhibit "A" at ¶ 16.  As the regional EMS council, EMSW's duties include, but are not limited to "carry[ing] out, to the extent feasible, the Statewide and regional EMS system plans" and ensuring that EMS providers met the "licensure, certification, registration and continuing education requirements established under the act." Exhibit "A" at ¶ 18. EMSW is governed by its Board of Directors.  Exhibit "A" at ¶ 19. At or around the time of the incidents referenced in the Complaint, the Board of Directors of EMSW consisted, in part, of individuals who were employed by UPMC and/or MAC, agents of Defendant.  Exhibit "A" at ¶ 20.

**C.** **Offensive Conduct of Defendant and its Agents**

In December 2016, Defendant awarded a contract to Plaintiff to provide ambulance services to Veterans Hospitals in Pittsburgh, PA (the "Contract").   Exhibit "A" at ¶ 21.  Before Defendant awarded the Contract to Plaintiff, Plaintiff experienced unreasonable and unnecessary delays in the bidding process. Exhibit "A" at ¶ 22.  Plaintiff believes that the unreasonable and unnecessary delays were occasioned by officials, employees and/or representatives of EMSW because of their racial bias against Plaintiff. Exhibit "A" at ¶ 24.

After Plaintiff secured the Contract, it experienced unreasonable, unnecessary and unprecedented delays in the licensure and/or inspection of its vehicles and/or equipment. Exhibit "A" at ¶ 25.  The unreasonable, unnecessary and unprecedented delays that Plaintiff experienced were occasioned by the officials, employees and/or representatives of EMSW and/or Defendant, directly.   Exhibit "A" at ¶ 26. Employees and/or representatives of EMSW also imposed unreasonable, unwarranted and/or unprecedented requirements on Plaintiff for the licensure and/or inspection of vehicles and/or equipment. Exhibit "A" at ¶ 27. These unreasonable, unwarranted and/or unprecedented delays stemmed from the racial bias against Plaintiff by officials, employees and/or representatives of EMSW, UPMC and/or Defendant.  Exhibit "A" at ¶ 28.

Once Defendant awarded the Contract to Plaintiff, Defendant scheduled an initial meeting with Plaintiff, presumably to discuss Plaintiff's duties and responsibilities under the Contract. Exhibit "A" at ¶ 29. Unbeknownst to Plaintiff, Defendant invited and/or permitted representatives of UPMC/PARC to attend the meeting. Exhibit "A" at ¶ 30.  Defendant's invitation to UPMC gave UPMC the opportunity to interfere with and/or attempt to interfere with Defendant's administration of the Contract, against the interests of Plaintiff Metro-Health.  These acts stem

{01586833;v1}

4

from the racial bias against Metro-Health of the officials, employees and/or representatives of UPMC and/or Defendant. Exhibit "A" at ¶ 33.

After Plaintiff began performing under the Contract, officials, employees and/or representatives of MAC, apparently in their capacity as the staffing agent for Defendant, sent multiple email messages to UPMC and/or MAC employees directing them to impose unprecedented and heightened checks and/or requirements on Plaintiff when Plaintiff presented to transport patients. Exhibit "A" at ¶ 34. In addition, the officials, employees and/or representatives of MAC, in their capacity as the staffing agent for Defendant, instructed their employees to: (a) delay calling Plaintiff for transportation services; (b) alter Plaintiff's logged response times and; (c) upgrade the call levels, in order to ensure that Plaintiff did not respond to calls timely and/or did not present at the VA hospital with the proper equipment. Exhibit "A" at ¶35.

Further, officials, employees and/or representatives of MAC, in their capacity as the staffing agent for Defendant employed other tactics designed to ensure that Plaintiff did not receive calls timely and/or would fail to respond to calls in a timely fashion. Exhibit "A" at ¶ 36. Moreover, officials, employees and/or representatives of MAC, in their capacity as the staffing agent for the Defendant, conducted multiple unprecedented, random and unannounced inspections of Plaintiff's vehicles at various locations in the Pittsburgh, PA area. Exhibit "A" at ¶ 37.

### D. Plaintiff Complained to Defendant that Defendant and Its Agents Were Discriminating Against It

Based on the above mentioned unprecedented conduct and Plaintiff's belief that the above referenced conduct stemmed from and/or was based on the collective racial bias against Plaintiff

by certain officials, employees and/or representatives of Defendant and its agents, EMSW, UPMC and/or MAC, Plaintiff lodged a complaint with Defendant.  Exhibit "A" at ¶ 39.

In response to the complaint lodged by Plaintiff, Defendant instituted an investigation into Plaintiff's complaints against Defendant. *See* Affidavit of Phinorice J. Boldin, attached hereto as Exhibit "B" at ¶ 3; *see also*, Defendant's "Adamson Declaration".  Defendant delegated the investigation of Plaintiff's complaints to a Department of VA Administrative Investigation Board (the "AIB").  Exhibit "A" at ¶ 3.

### E.   Plaintiff Requested, Pursuant To FOIA, All Information Related To Defendant's Investigation Of Its Claims Of Discrimination

By October 2017, Plaintiff had not received any information regarding the investigation of its complaints.  Therefore, on October 2, 2017, citing the FOIA, Plaintiff sought copies of all documents and information gathered by the AIB as a part of its investigation into Plaintiff's claim (the "Request").  Exhibit "A" at ¶ 4.  On or about December 27, 2017, Jeffrey Adamson, (Acting) VA Healthcare VISN 4 FOIA Officer, advised Plaintiff that the VHA had assigned the Request to him.  Exhibit "B" at ¶ 6.

### F.   Defendant Withheld, improperly, agency records responsive to Plaintiff's Request

Four (4) months after Plaintiff served the Request, Mr. Adamson forwarded to counsel for Plaintiff a package that included a letter and a CD containing 1385 pages of documents (collectively referred to as the "Response").  Exhibit "B" at ¶ 7.  The documents included in the Response are replete with redactions - all of which Defendant label as exemptions pursuant to "(b)(5)" and "(b)(6)" of the FOIA. Exhibit "B" at ¶ 9.  Indeed, nearly every one of the 1385 pages produced reflects wholesale redactions. Exhibit "B" at ¶ 8-11.   The redactions are so massive that,

{01586833;v1}

6

in some instances, the content of multiple consecutive pages is redacted completely.  Exhibit "B" at ¶ 8-11.

By way of example, based on the limited information disclosed by Defendant, the AIB interviewed thirteen (13) individuals as a part of its investigation.  *See* Exhibit "H" of the Adamson Declaration.   The Response includes transcripts of the interviews of the aforementioned individuals.   However, Defendant redacted, in their entirety, ***every single witness' response to every single question***.   Exhibit "B" at ¶ 10.   In addition, Defendant produced large block redactions of nearly every single email message included in the Response.  Exhibit "B" at ¶ 11.

The magnitude of Defendant's redactions provide Plaintiff no meaningful information about any facts disclosed during the investigation as they relate to Plaintiff's claims of racial discrimination at the Pittsburgh VA. Exhibit "B" at ¶ 12.   Moreover, redactions of this magnitude inhibit, greatly, the ability of Plaintiff and/or undersigned counsel to determine whether the information withheld falls within any of the applicable exemptions.   Exhibit "B" at ¶ 12.

Consequently, by letter dated June 8, 2018, Plaintiff served the Office of General Counsel of the Department of VA, with its appeal of the Response under the FOIA (the "Appeal").  Exhibit "B" at ¶ 13.  Via letter dated June 15, 2018, Defendant acknowledged receipt of the Appeal, but did not produce unredacted copies of the records requested.  Exhibit "B" at ¶ 14.

### G.   <u>Procedural History</u>

On July 31, 2018, Plaintiff filed a Complaint for Injunctive Relief requesting the Court to compel Defendant to disclose the requested records/information as required under the FOIA. (Doc. 1). On April 1, 2019, Defendant filed the instant Motion for Summary Judgment. (Doc. 42).

As Plaintiff explains more fully below, Defendant's massive redactions of the documents responsive to Plaintiff's Request make it impossible for this Honorable Court – or any rational actor – to make a determination as to what, if any, exemptions apply to Plaintiff's Request.  Given the massive redactions contained in the  Response, there are genuine issues of material facts as to whether the voluminous information withheld by Defendant falls within the asserted exemptions of the FOIA.  Therefore, this Court must deny Defendant's Motion, in its entirety, and conduct an in camera review of the Response to identify the documents/information Defendant must disclose to Plaintiff.

III.    **LEGAL ARGUMENT**

A.    **Standard of Review**

"The Freedom of Information Act (FOIA), 5 U.S.C. § 552, requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material." *Milner v. Dep't of Navy*, 562 U.S. 562, 564, 131 S. Ct. 1259, 179 L. Ed. 2d 268 (2011). "The FOIA confers jurisdiction on the district courts 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld.'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142, 109 S. Ct. 2841, 106 L. Ed. 2d 112 (1989) (quoting § 552(a)(4)(B)). Thus, a federal court has jurisdiction to compel an agency to produce requested records where it is shown "that an agency has (1) "improperly" (2) "withheld" (3) "agency records.""" *Tax Analysts*, 492 U.S. at 142 (quoting *Kissinger v. Reporters Committee for Freedom of Press*, 445 U.S. 136, 150, 100 S. Ct. 960, 63 L. Ed. 2d 267 (1980)); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 813 F.3d 380, 383, 421 U.S. App. D.C. 200 (D.C. Cir. 2016).

"The burden is on the agency to demonstrate, not the requester to disprove, that the

{01586833;v1}

materials sought are not 'agency records' or have not been 'improperly' 'withheld.'" *Tax Analysts*, 492 U.S. at 142 n.3. The district court "conducts a de novo review of the agency's decision to withhold records from the public and determines as a matter of law if the agency has complied with the statute." *Pohl v. U.S. E.P.A.*, No. CIV.A. 09-1480, 2010 U.S. Dist. LEXIS 116461, 2010 WL 4537048, at *2 (W.D. Pa. Nov. 2, 2010) (citing 5 U.S.C. § 552(a)(4)(B)).

The summary judgment standard of Fed.R.Civ.P. 56(c) applies to FOIA cases as it would to any other civil action. *Commw. of PA, Dep't of Public Welfare v. United States Dep't of Health & Human Serv.*, 623 F.Supp. 301, 303 (M.D.Pa. 1985). In order to prevail on a motion for summary judgment in a FOIA action, the government agency must show that there are no disputed material facts and that each page of material that falls within the requested category either (a) has been produced; (b) is unidentifiable; or (c) is exempt from disclosure. *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833, 347 U.S. App. D.C. 235 (D.C. Cir. 2001) (citations omitted); *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368, 200 U.S. App. D.C. 312 (D.C. Cir. 1980) (citation omitted). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). This Court must deny Defendant's Motion because Defendant has not met its burden of proof.

**B.      Defendant Applied, Improperly, Blanket Redactions to Responsive Documents Under the Guise of Exemptible Material in Order to Circumvent the Requirements of the FOIA.**

**1.      Defendant Has Not Demonstrated That The Information Withheld Meets The Requirements of Exemption 5**

In the Response, Defendant uses Exemption 5 to redact, improperly, ***every single witness' response to every single question asked***.   These redactions go far beyond the scope of the exemption.

Pursuant to 5 U.S.C § 552(b)(5), the following information is exempted from FOIA disclosure: inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested…." 5 U.S.C § 552(b)(5).   Courts interpret this exemption to encompass, *inter alia*, three (3) evidentiary privileges: (a) the deliberative process privilege, (b) the attorney-client privilege, and (c) the attorney work product privilege. *Tax Analysts v. IRS*, 394, F.3d 71, 76 (D.C. Cir. 2002).   In this case, Defendant purports to apply Exemption 5 to protect the deliberative process privilege.

The deliberative process privilege shields pre-decisional, confidential, intra-agency advisory opinions that reflect the consultative functions of the government." *Cozen O'Connor v. U. S. Department of Treasury*, 570 F.Supp. 2d 749, 779 (E.D. Pa. 2008).   Like all FOIA privileges, courts construe the deliberative process privilege narrowly.   *Judicial Watch Inc. v. Department of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004).

Significantly, the deliberative process privilege goes to conceptualizing and not to the gathering of facts. *Cozen O'Connor v. U. S. Department of Treasury*, 570 F.Supp. 2d 749, 779 (E.D. Pa. 2008). In that regard, it does not protect from disclosure documents that are merely peripheral to actual policy formulation. *Grand Central Partnership Inc. v. Cuo*mo, 166 F.3d 473, 482 (2d Cir. 1999). Therefore, documents that contain only factual material, even though used in the deliberative process, are not protected. On the contrary, these documents and/or the unprotected information in these documents ***must be disclosed***. *See Grand Central Partnership*, 166 F.3d at 473.

Moreover, an agency claiming the deliberative process privilege has the burden of establishing the right to withhold evidence from the public. *Senate of the Commonwealth of Puerto Rico v. United States*, 823 F.2d 574 (D.C. Cir. 1987). "[C]onclusory allegations of privilege will not suffice in order to carry the agency's burden. *Id.* (citations omitted). On the contrary, to "approve exemption of a document as pre-decisional a court must be able to pinpoint an agency decision or policy to which the document contributed." *Id.* citing *Paisley v. CIA*, 229 712 F.2d 686, 698 (D.C. Cir. 1981).

Citing the AIB investigation, Defendant maintains "there is no question that the process which the AIB undertook to collect the relevant information . . .is deliberative . . . ." and, therefore, the massive redactions are proper. Defendant attempts to buttress this position with Adamson's statement "given that the AIB specifically chose what information to collect during the course of its investigation, I determined that the information collected reflects the AIB's decision making process and falls within the deliberative process exemption." Adamson Declaration at ¶ 19.

However, neither the broad sweeping statements in Defendant's Motion, nor the Adamson Declaration render the mass redactions appropriate under Exemption 5.

Indeed, as noted above, the deliberative process privilege goes to conceptualizing and not to the gathering of facts. *See Cozen O'Connor,* 570 F.Supp. 2d at 779.  That the AIB sought to and collected information related to Plaintiff's complaint, does not render all of the information gathered protected under Exemption 5.  *See Id.*; *see also Grand Central Partnership*, 166 F.3d at 473.  Defendant's most egregious redactions demonstrate the absurdity of its position.

As noted above, the AIB interviewed thirteen (13) individuals and produced the transcripts of the interviews.  Defendant redacted ***every single witness' response to every single question asked***.  There is simply no reasonable interpretation of these redactions that could give rise to a determination that none of the redacted information (a) is simply the gathering of facts; (b) is solely factual or (c) or merely peripheral to an actual policy.  In that regard, there is simply no reasonable interpretation of these redactions that could give rise to a determination that the information is protected under Exemption 5.

### 2.    Defendant Has Not Demonstrated That The Information Withheld Meets The Requirements of Exemption 6

Pursuant to 5 USC § 552(b)(6), the following information is exempted from FOIA disclosure "(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy…."  "The exemption protects 'individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information.'" *Cozen*, 570 F. Supp. 2d at 781.  Exemption 6 covers "records that can be identified as applying to that individual." *Palmarini v. IRS*, 2019 U.S. Dist. LEXIS 53407 *9 (E.D.

{01586833;v1}

Pa. Mar. 29, 2019). "To determine whether the exemption applies, courts balance the public interest in disclosure against the privacy interest protected by the exemption." *Id.*

The exemption applies only to confidential information. Consequently, Exemption 6 does not protect non-confidential information contained in personnel, medical, or similar files." *Id.* at 782.

As detailed above, in the Response, Defendant withholds massive amounts of information labeled as a "(b)(6)" redaction.  However, it is not reasonable to assume that all of the information withheld under this label is protected by Exemption 6.

Moreover, Defendant maintains that it can properly redact the response of every single interviewee under the guise of "protecting confidential information."  Again, the mass redactions – without any support in logic or the law – lend to the idea that Defendant is simply acting in bad faith.  There is simply no rational argument that the blanket redactions contained in the Response somehow fall under the protections of Exemption 6.

Defendant argues that the individuals interviewed and mentioned in documents have "privacy interests" that trigger a balancing test against the public interest in disclosure of information.  At the outset, Defendant's argument is erroneous in that a review of the Response – and Adamson's declaration – do not lead to the conclusion that any personal information is actually contained in the Response.  Indeed, while some redactions could – in theory – be protected under Exemption 6,   Defendant has used Exemption 6 to **make broad blanket redactions of information that plainly cannot be personal information protected by the exemption**.  Simply put, interview responses of individuals and communications in emails do not garner protection

under the guise of "confidential personal information" merely because Defendant makes broad conclusory statements that said information is "confidential" and "personal."

Defendant argues that the "privacy interests" outweigh the public interest in determining whether Defendant is engaging in tactics that demonstrate racial bias. As stated above, **the redactions to not lend to the conclusion that there is any privacy interest at stake**. Nevertheless, even assuming – arguendo - that there was a privacy interest at issue, the issue of potential widespread racial bias on the part of a government institution is of such importance to public policy as to outweigh the privacy interests that any individuals **may have** with respect to simply being identified as someone who was a witness in an AIB investigation. Cite.

Defendant tries to skirt by the public policy interests - at the core of this case - by claiming that "Plaintiff is disappointed that it failed to enter into a profitable business venture . . . ." This position is direct evidence of the Defendant's bad faith with respect to this matter. Specifically, Plaintiff seeks information in order to determine the extent of racial bias – including bias that may have been exerted against it. This goal is of primary importance not simply to Plaintiff, but to the public and perhaps most importantly to the government agency itself.

In sum, Defendant's claims of privacy interests **throughout the entirety of the redactions** are inappropriate and do not fall within the protections of exemption 6. Defendant's claims that Plaintiff has a personal business interest additionally ignores the vastly important public policy issue at the heart of this matter. There is simply no way that Defendant's mass redactions are protected via exemption 6 and therefore, Defendant's Motion must be denied.

### 3.     Defendant has failed to Demonstrate that it has Released all Segregable Factual Material.

The agency "has the burden of demonstrating that it has released all reasonably segregable portions of each of the withheld documents or portions of documents, or providing a factual recitation as to why certain materials are not reasonably segregable." *Pennsylvania v. United States,* 2006 U.S. Dist. LEXIS 101810, *51 (W.D. Pa., Nov. 22, 2006) (Report and Recommendation), adopted in *Pennsylvania v. United States*, 2006 U.S. Dist. LEXIS 92807 (W.D. Pa., Dec. 21, 2006) (citations omitted). Because the emphasis of FOIA is on information rather than documents, an agency cannot base withholding an entire document or page of information simply on a showing that it contains some exempt material." *Id.* (emphasis in original). Thus, "'non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.'" *Id.* (citation omitted).

An "agency must provide a detailed justification for its decision that nonexempt material is not segregable, which includes a description of 'what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document.'" *Id.* at *52. "In determining whether the agency has satisfied its burden of proof regarding segregability … the agency [is required] to 'describe the process by which [it] determined that all reasonably segregable material of each of the withheld documents or portions of documents had been released' and to 'provide a factual recitation of why certain materials [were] not reasonably segregable." *Id.* (citation omitted). The agency cannot simply make a conclusory statement in an affidavit that all reasonably segragated information has been provided; it must set out this level of detail. *Id.* at *52-57.

{01586833;v1}

The Court is required to make specific findings of segregability regarding each of the withheld documents. *Krikorian v. Department of State*, 984 F.2d 461, 467 (D.C. Cir. 1993). Notably, agency declarations are insufficient if they do not describe the process by which it determined that all reasonably segregable material had been release and why some materials are not reasonably segregable." *Ruggerio v. U.S. Department of Justice*, 257 F. 3d, 534, 553 (D.C. Cir. 2001).

Perhaps the most egregious aspect of Defendant's failure to abide by its requirements under the FOIA is its failure to provide any justification for its failure to release reasonably segregable factual material.

Defendant's Response is replete with massive redactions speciously labeled as exempt under (b)(5) and (b)(6), despite the fact that any elementary review of the Response dictates that the redactions could not all possibly fall under those exemptions. Indeed, Defendant would appear to hope that a conclusory statement (like those utilized by Defendant throughout its brief) that all segregable material was released will be sufficient to convince this Court to grant summary judgment. In this Circuit, however, it is clear that a conclusory statement regarding reasonably segregable material is not enough to support summary judgment. *See Davin v. United States Department of Justice*, 60 F.3d 1043 (3d Cir. 1995).

A cursory review of the redactions at issue demonstrates there is no way a reasonable mind could determine that Defendant disclosed all reasonably segregable information. Again – every single response provided in the interview transcripts is redacted entirely. Similarly, mass redactions are present in nearly every single email and memorandum. Moreover, Defendant offers

no explanation, whatsoever, as to the process by which it determined that all reasonably segregable material had been released and why some materials are not reasonably segregable.

Plainly, Defendant has not met its burden of proof that it has released all segregable factual material.  Therefore, this Court must deny Defendant's Motion for Summary Judgment.

      **4.**      **At A Minimum, this Court should conduct an En Camera Review of the Documents to Determine the Applicability of the stated FOIA Exemptions to the Redacted Material.**

Pursuant to 5 U.S.C. § 552 (a)(4)(B), a "court may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the FOIA exemptions.   In fact, as explained by the United States Court of Appeals for the Third Circuit, "the "FOIA explicitly contemplates in camera review in the exemption context." *Am. Civil Liberties Union of N.J. v. F.B.I.*, 733 F.3d 526, 534 (3d Cir. 2013); *see also Samahon v. U.S. Dep't of Justice*, 2015 U.S. Dist. LEXIS 23813, at *fn 19 (E.D. Pa. Feb. 27, 2015) ("[c]ourts have used an in camera inspection to determine whether the withheld [information] actually lines up with the decision maker's conclusion and reasoning.").

As established above, the most cursory review of the redactions and supporting declaration of Adamson, demonstrate that Defendant has not met its burden.  In fact, material issues of fact prevail as to whether any of the voluminous redactions fall within the FOIA exemptions asserted. In that regard, Plaintiff requests that this Court deny Defendant's Motion and order Defendant to produce unblemished copies of all documents responsive to the Request. In the alternative, Plaintiff requests that this Court conduct an *en camera* review of the documents produced to determine whether the wholesale redactions applied by Defendant are improper.  .

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment, in its entirety.  In the alternative, Plaintiff respectfully request that this Court conduct an *en camera* review of unredacted copies of the Response to determine whether the wholesale redactions applied by Defendant are improper.

FINEMAN KREKSTEIN & HARRIS, P.C.

By:    _____/S/ Phinorice J. Boldin_____
Richard J. Perr, Esquire (Pa 72883)
Phinorice J. Boldin, Esquire (PA 68027)
Ten Penn Center
1801 Market Street, Suite 1100
Philadelphia, PA  19103-1628
(v) 215-893-9300; (f) 215-893-8719
rperr@finemanlawfirm.com
pboldin@finemanlawfirm.com
Attorneys for Plaintiff

Dated:  May 1, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of May, 2019, a true and correct copy of the within Opposition to Defendant's Motion for Summary Judgment was duly served by either electronic filing and/or first class mail, postage prepaid, upon the following:

**Karen Gal-Or**
**Assistant U.S. Attorney**
**Joseph F. Weis, Jr. U. S. Courthouse**
**700 Grant Street, Suite 4000**
**Pittsburgh, PA 15219**
**(412) 894-7326**
**Karen.GalOr@usdoj.gov**
**PA ID No. 317258**

**Jill L. Lockinar**
**Assistant U.S. Attorney**
**Joseph F. Weis, Jr. U. S. Courthouse**
**700 Grant Street, Suite 4000**
**Pittsburgh, PA 15219**
**(412) 894-7429**
**Jill.Lockinar@usdoj.gov**
**PA ID No. 85892**

*Counsel for Defendant*

{01586833;v1}