IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WESTERN STAR HOSPITAL** | ) | |
| **AUTHORITY INC., t/d/b/a** | ) | |
| **METRO HEALTH EMS**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:18cv1011 |
| | ) | **Electronic Filing** |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **VETERANS AFFAIRS**, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

February 20, 2020

**I.   INTRODUCTION**

Plaintiff, Western Star Hospital Authority, Inc., t/d/b/a Metro Health EMS ("Metro" or "Plaintiff") initiated this action against Defendant, United States Department of Veteran Affairs (the "VA" or "Defendant") under the Freedom of Information Act, 5 U.S.C. §552 ("FOIA"), asking this Court to order the VA to abide by its obligation under FOIA and produce unredacted copies of documents requested by Metro.  The VA has filed a Motion for Summary Judgment, Metro has responded, and the matter is now before the Court.

**II.   STATEMENT OF THE CASE**

Metro is an emergency transportation company which provides basic life support and advanced life support ambulatory services to the greater Pittsburgh area. Plaintiff's Concise

Statement of Additional Fact ("Pl. CSAF")[1] ¶ 21.  B. Lamont Doyle ("Doyle"), an African American, is the Chief Operating Officer of Metro. Pl. CSAF ¶ 22.

The VA is a federal cabinet-level agency that provides healthcare and related services to military veterans at Veteran Administration medical centers and other outpatient medical treatment centers.  Pl. CSAF ¶ 23. Among the medical centers utilized by the VA is the University of Pittsburgh Medical Center ("UPMC"). Pl. CSAF ¶ 24.  Medevac Ambulance Company ("MAC") is an ambulance company hired by UPMC to perform services as staff/paramedics at Veterans' Hospitals in the Pittsburgh and surrounding areas. Pl. CSAF ¶ 25.

The Emergency Medical Services Division of the PA Department of Health is known as Emergency Medical Services West ("EMSW"), whose duties include, but are not limited to "carry[ing] out, to the extent feasible, the Statewide and regional EMS system plans" and ensuring that EMS providers meet the "licensure, certification, registration and continuing education requirements established under [Pennsylvania law]." Pl. CSAF ¶ 27. EMSW is governed by its Board of Directors. *Id.*  During the times relevant to this action, Metro alleges

---

[1] The VA has complied with this Court's Local Rule 56(B) by filing its Concise Statement of Material Facts. Metro has complied with Local Rule 56(C) by filing a responsive concise statement of material facts that "responds to each numbered paragraph in the [VA's] Concise Statement of Material Facts…[that admits or denies] whether each fact contained in the [VA's] Concise Statement of Material Facts is undisputed and/or material…." LCvR. 56(C)(1)(a). With regard to the Paragraphs which Metro has denied, however, Metro has failed to reference the appropriate part of the record which substantiates its denial. LCvR. 56(C)(1)(b).  Therefore, such Paragraphs, which are not "specifically denied or otherwise controverted" are "deemed admitted" pursuant to Local Rule 56 (E) if the Court finds such statements material. Similarly, the VA failed to "specifically" deny "or otherwise controvert" Metro's Concise Statement of Additional Fact and will "deemed admitted" pursuant to Local Rule 56 (E) if the Court finds such statements material.

2

that the Board of Directors of EMSW consisted, in part, of individuals who were employed by UPMC and/or MAC. Pl. CSAF ¶ 28.

In December 2016, the VA awarded a contract to Metro to provide ambulance services to Veterans Hospitals in Pittsburgh, PA (the "Contract"). Pl. CSAF ¶ 29. Metro contends that prior to the award of the Contract, it experienced unreasonable and unnecessary delays in the bidding process occasioned by officials, employees and/or representatives of EMSW because of racial bias. Pl. CSAF ¶ 30. Subsequent to the award of the Contract, Metro contends it experienced unreasonable, unnecessary and unprecedented delays in the licensure and/or inspection of its vehicles and/or equipment, again occasioned by the officials, employees and/or representatives of EMSW, UPMC and/or the VA and were based upon racial bias. Pl. CSAF ¶¶ 31 & 32.

Metro further alleges that it was the victim of racial bias by the officials, employees and/or representatives of UPMC and/or the VA in the following ways:

> 1. During performance of the Contract, officials, employees and/or representatives of MAC, in their capacity as the staffing agent for the VA, sent multiple email messages to UPMC and/or MAC employees directing them to impose unprecedented and heightened checks and/or requirements on Metro when Metro presented to transport patients;
>
> 2. Officials, employees and/or representatives of MAC instructed their employees to: (a) delay calling Metro for transportation services; (b) alter Metro's logged response times and; (c) upgrade the call levels, in order to ensure that Metro did not respond to calls timely and/or did not present at the hospital with the proper equipment;
>
> 3. Officials, employees and/or representatives of MAC employed other tactics designed to ensure that Plaintiff did not receive calls timely and/or would fail to respond to calls in a timely fashion; and
>
> 4. Officials, employees and/or representatives of MAC conducted multiple unprecedented, random and unannounced inspections of Metro's vehicles at various locations in the Pittsburgh, PA area.

*See* Pl. CSAF ¶¶ 35, 36 & 37.

Based upon such conduct, Metro lodged a complaint with the VA. Pl. CSAF ¶ 39. In response, the VA instituted an investigation and delegated such investigation to a Department of the VA Administrative Investigation Board (the "AIB"). Pl. CSAF ¶ 39.

On October 2, 2017, Phinorice J. Bolden of Fineman, Krekstein & Harris, P.C. ("Bolden") sent a FOIA request (the "Request") via email to the VA Office of the Inspector General (the "OIG") requesting copies of all documents and information gathered by the AIB as a part of its investigation into Metro's claim. Pl. CSAF ¶ 40; Defendant's Concise Statement of Material Facts ("Def. CSMF") ¶ 1.  The OIG received the Request on October 5, 2017.  Def. CSMF ¶ 2.  The OIG sent a response to Bolden, to which it attached two (2) pages of records responsive to the Request that were in the OIG's custody. Def. CSMF ¶ 3.  The OIG's response also explained that records related to administrative investigations are not maintained by the OIG, and because the Request referred to records related to an administrative investigation, the OIG had transferred the Request to the VA Central Office of Privacy and Records Management (the "VACO"). *Id.*

In a letter dated December 7, 2017, the VACO service advised Bolden that records regarding administrative investigations were maintained at the VISN 4 VA's Stars and Stripes Health Care Network and the VISN 10 Cincinnati VA Medical Center. Def. CSMF ¶ 4.  On or about December 26, 2017, Jeffrey Adamson ("Adamson"), Government Information Specialist for the VA, assumed responsibility as the VISN 4 FOIA officer, and therefore, became responsible for Bolden's FOIA request. Def. CSMF ¶ 5.

Adamson began his search for responsive records by reaching out to the Regional VA contracting officials and requesting such officials conduct a search for all responsive records and advise him if there were any other departments or staff that needed to be contacted to comply with the request. Def. CSMF ¶ 7.  On January 3, 2018, Adamson received a response from a

4

contracting official advising that the VA Pittsburgh Healthcare System had convened an AIB to conduct an investigation regarding issues related to a contract between Metro and the VA. Def. CSMF ¶ 8.  Adamson then sent a request to the Supervisor of the VA Pittsburgh healthcare facility Quality and Patient Safety ("Q&PS") office and asked that the office provide him with a copy of all documents related to the pertinent AIB investigation. Def. CSMF ¶ 9.

On January 30, 2018, Adamson received 1385 pages of records from the Q&PS office that he deemed responsive to the Request. Def. CSMF ¶ 10. No further document search was conducted. *Id.*  Over the next few months, Adamson reviewed the responsive records and applied redactions where he determined that information must be withheld or redacted under FOIA exemptions. Def. CSMF ¶ 12. On April 18, 2018, Adamson sent his initial agency decision letter along with the copy of the 1385 pages of responsive records on a CD to Bolden advising that information was withheld/redacted under FOIA exemptions. Def. CSMF ¶ 17.  The redactions were made pursuant to subsections (b)(5) and (b)(6) of the FOIA. Def. CSMF ¶¶ 14 & 15; Pl. CSAF ¶ 43.

Metro contends that nearly every one of the 1385 pages produced reflects wholesale redactions, and in some instances, the content of multiple consecutive pages had been redacted completely. Pl. CSAF ¶¶ 43 & 44.  The VA's FOIA response includes transcripts of interviews with individuals whose testimony was redacted in their entirety. Pl. CSAF ¶ 46. Further, the VA produced large block redactions of nearly every single email message included in their response. *Id.* Metro contends that the magnitude of the redactions provides no meaningful information about any facts disclosed during the investigation as they relate to Metro's claims of racial discrimination. Pl. CSAF ¶ 47.  Moreover, Metro contends that such wholesale redactions inhibit Metro's, and/or its counsel's, ability to determine whether the information withheld falls within any of the applicable exemptions. Pl. CSAF ¶ 48.

5

### III.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e).  Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond by pointing to sufficient cognizable evidence to create material issues of fact concerning every

element as to which the non-moving party will bear the burden of proof at trial. *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).).

In the instant FOIA action, Metro contends that the VA failed to abide by its obligation under FOIA and produce unredacted copies of the documents requested. The VA, therefore, bears the burden of showing that a FOIA exemption justifies the redaction of information appearing in the requested documents. *Davin v. United States DOJ*, 60 F.3d at 1049. The Third Circuit has articulated the standard for summary judgment in the context of FOIA claims as follows:

> [A]n agency is entitled to summary judgment if its affidavits describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

*American Friends Service Committee v. Department of Defense*, 831 F.2d 441, 444 (3d Cir. 1987) (citations and internal quotation marks omitted).

**IV.   DISCUSSION**

The FOIA was enacted by Congress "to facilitate public access to Government documents." *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). As such, FOIA "requires the government and its agencies to disclose information to the public upon request." *Cozen O'Connor v. United States Dep't of Treasury*, 570 F. Supp. 2d 749, 764 (E.D. Pa. 2008) (citing 5 U.S.C.A. § 552(a)(3)(A)(2007)). Congress, however, created nine exemptions for when government information need not be disclosed. *See* 5 U.S.C.A. § 552(b)(1)-(9). FOIA "creates a strong presumption in favor of disclosure." *Davin v. United States Dep't of Justice*, 60 F.3d 1043, 1049 (3d Cir. 1995). When requested information is withheld, the district court must

conduct a *de novo* review of the record . . . and the agency resisting disclosure bears the burden of persuasion in defending its action." *Milton v. United States Dep't of Justice*, 783 F. Supp. 2d 55, 57 (D. D.C. 2011) (citing 5 U.S.C.A. § 552(a)(4)(B)).

To properly invoke a FOIA disclosure exemption, "the agency must provide reasonably specific information that explains how the exemption applies." *Cozen O'Connor v. United States Dep't of Treasury*, 570 F. Supp. 2d at 765 (citing *Am. Friends Serv. Comm. V. Dep't of Defense*, 831 F.2d 441, 444 (3d Cir. 1987); *Military Audit Project v. Casey*, 656 F.2d 724, 738, 211 U.S. App. D.C. 135 (D.C. Cir. 1981)). An agency fulfills this duty when it "provide[s] 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *Davin v. United States Dep't of Justice*, 60 F.3d at 1050 (quoting *McDonnell v. United States*, 4 F.3d 1227, 1241 (3d Cir. 1993)). "[A]n agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 186 (3d Cir. 2007). Therefore, if an exemption is claimed only to part of the requested record, the agency is obligated to produce any reasonably segregable portion of the document. *See id.* at 1049 (citing 5 U.S.C.A. § 552(b)).

The VA contends that each redaction is justified by FOIA exemptions listed in 5 U.S.C. §§ 552 (b)(5) and (b)(6).  Pursuant to Subsection (b)(5), the following information is exempted from disclosure:

> inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested.

5 U.S.C § 552(b)(5). FOIA also exempts the following information from disclosure under Subsection (b)(6): "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy".

In support of its use of such exemptions the VA has submitted the affidavit of Jeffrey Adamson ("Adamson"), Government Information Specialist for the VA, and a Vaughn index. A Vaughn index[2] "is a detailed affidavit correlating the withheld documents with the claimed exemptions. To pass muster, a Vaughn index must consist of one comprehensive document, adequately describe each withheld document or redaction, state the exemption claimed, and explain why each exemption applies." *Cozen O'Connor v. United States Dep't of Treasury*, 570 F. Supp. 2d at 765 (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1144-1145 (D.C. Cir. 1983)). According to the Third Circuit, while there is no set form for a Vaughn index, "the hallmark test is 'that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure.'" *Davin v. United States DOJ*, 60 F.3d at 1050 (citing *Hinton v. Dep't of Justice*, 844 F.2d 126, 129 (3d Cir. 1988)). Thus, an agency cannot satisfy its burden by merely citing categorical codes and providing a general description of what the codes signify. *Id.* at 1051. Instead, "an agency using justification codes must also include specific factual information concerning the documents withheld and correlate the claimed exemptions to the withheld documents." *Id.*

What the VA failed to submit however is a set of the documents it contends are subject to the exemptions and copies of the redacted versions of such documents. Because the VA has

---

[2] This device is derived from *Vaughn v. Rosen*, 157 U.S. App. D.C. 340, 484 F.2d 820, 827 (D.C. Cir. 1973). The *Vaughn* Court held that the specificity requirement may be satisfied by a system of itemizing and indexing that correlates the government's statements in support of nondisclosure with the actual documents. *Id.*

made broad blanket[3] redactions under exemptions (b)(5) and (b)(6), this Court is unable to determine whether the VA's redactions are indeed exempt without an examination of the documents. The Court is simply unable to find in favor of the VA at this time without review of the documents at issue.

V. **CONCLUSION**

Based on the foregoing, the VA's motion for summary judgment will be denied. The Court, however, will order that the VA submit copies of the documents at issue together with the redacted versions of such documents for an *in camera* review, and the Court will entertain a Motion for Reconsideration of the Motion for Summary Judgment filed contemporaneously with the requested documents. An appropriate Order follows.

---

[3] Metro contends that the AIB interviewed thirteen (13) individuals and produced the transcripts of the interviews, but the VA redacted every single witness' response to every single question asked.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WESTERN STAR HOSPITAL AUTHORITY INC., t/d/b/a METRO HEALTH EMS**, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) 2:18cv1011 |
| | ) **Electronic Filing** |
| **UNITED STATES DEPARTMENT OF VETERANS AFFAIRS**, | ) ) ) |
| Defendant. | ) ) |

**ORDER OF COURT**

AND NOW, this 20th day of February, 2020, upon consideration of the Motion for Summary Judgment (**Document No. 42**) filed on behalf of the United States Department of Veterans Affairs, the Response thereto and the briefs in support thereof, and pursuant to the Memorandum Opinion filed herewith,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is **DENIED** without prejudice.

IT IS FURTHER ORDERED that the Defendant submit to this Court, on or before March 23, 2020, copies of the documents at issue together with the redacted versions of such documents for an *in camera* review. The Defendant shall file a Motion for Reconsideration of the Motion for Summary Judgment contemporaneously with the documents requested by this Court. No briefs need be filed with the Motion for Reconsideration as all briefs previously submitted in

support of, and in opposition to, the Defendant's Motion for Summary Judgment will suffice.

s/ DAVID STEWART CERCONE
David Stewart Cercone
Senior United States District Judge

cc:   Richard J. Perr, Esquire
   Laura A. Seider, Esquire
   Phinorice J. Boldin, Esquire
   Karen Gal-Or, Esquire

   (*Via CM/ECF Electronic Mail*)